**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**HEIDI J. D.,**

        **Plaintiff,**

                                           **Civil Action 2:21-cv-878**
        **v.**                               **Judge James L. Graham**
                                           **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF
SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Heidi J.D., brings this action under 42 U.S.C. § 405(g) for review of a final

decision of the Commissioner of Social Security ("Commissioner") denying her applications for

social security disability insurance benefits and supplemental security income. This matter is

before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's

Statement of Errors (ECF No. 18), the Commissioner's Memorandum in Opposition (ECF No. 23),

and the administrative record (ECF No. 13). Plaintiff did not file a Reply. For the reasons that

follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and

**AFFIRM** the Commissioner's decision.

### I.    BACKGROUND

Plaintiff protectively filed her applications for disability insurance benefits and

supplemental security income in April 2015, alleging that she has been disabled since March 26,

2015, due to Prinzmetal's angina with coronary artery disease, obesity, chronic obstructive

pulmonary disease, and gastroesophageal reflux disease.  (R. at 205-16, 242.)  Plaintiff's

applications were denied initially in July 2015 and upon reconsideration in October 2015.  (R. at

102-44.)  Plaintiff sought a *de novo* hearing before an administrative law judge (the "ALJ").  (R. at

159-63.)  Plaintiff, who was represented by counsel, appeared and testified at a hearing held on

September 13, 2017.  (R. at 56-101.)  A Vocational Expert ("VE") also appeared and testified.

(*Id.*)  ALJ Kristen King issued a decision finding that Plaintiff was not disabled within the meaning

of the Social Security Act on January 23, 2018.  (R. at 34-55.)   The Appeals Council denied

Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.

(R. at 4-10.)

Thereafter, on December 4, 2019, Plaintiff appealed the final decision of the Commissioner

to this Court.  *See Heidi D. v. Comm'r of Soc. Sec.*, Case No. 2:18-cv-1497.   Upon a Joint Motion

for Remand, this Court remanded the case to the Commissioner.  After the Appeals Council issued

a remand order, a hearing was held on January 28, 2020, with ALJ Valerie A. Bawolek.  (R. at

1072-96.)  Mary Buban, Psy.D., and Steven Golub, M.D., appeared and testified as medical

experts, and a vocational expert testified as well.  (*Id.*)  A second hearing via telephone was held

on October 5, 2020.  (R. at 1097-1117.)   On November 3, 2020, ALJ Bawolek issued a partially

favorable decision finding that Plaintiff was not disabled prior to August 27, 2020, but became

disabled on that date.  (R. at 1042-1071.)  Plaintiff did not request review by the Appeals Council,

opting instead to directly file the instant suit in this Court on March 1, 2021. (Doc. 1).

## II.   HEARING TESTIMONY

The ALJ summarized Plaintiff's hearing testimony as follows:

2

[Plaintiff] testified she has anxiety and has difficulty focusing and being around people. She stated she does not like going to the store anymore. [Plaintiff] noted she has panic attacks about once a month. She indicated medication helps to a point. [Plaintiff] testified her mood is down most of the time. She has trouble sleeping. [Plaintiff] alleged constant pain. She [] naps during the day. [Plaintiff] testified she has chest pain and takes nitroglycerin. She elevates her legs during the day. [Plaintiff] experiences back pain and spasms and receives injections. She indicated she could sit two hours. [Plaintiff] testified she took up knitting because she sits so much. She stated she could stand one to two hours and walk about a half hour.

(R. at 1053.)

## III.  MEDICAL EVIDENCE

The ALJ summarized the medical records related Plaintiff's physical impairments as

follows:

Her medical records do not corroborate symptoms to the disabling extent asserted by [Plaintiff]. Office notes list some of [Plaintiff]'s diagnoses as chronic obstructive lung disease, obesity, degeneration of lumbosacral intervertebral disc (Exhibit 18F, pages 3 and 4). In March 2015, [Plaintiff] complained of right rib pain (Exhibit 11F, pages 262), but in April 2015, her back range of motion was normal with no tenderness (Exhibit 6F, pages 6). Progress notes from 2015 revealed normal range of motion of the spine and gait (Exhibits 4F, 5F, and 9F). MRI of [Plaintiff]'s lumbar spine from January 2016 showed only mild multilevel spondylosis with mild bilateral neural foraminal narrowing at L5-S1 (11F, pages 17 and 18).

[Plaintiff] complained of low back pain radiating into lower extremities. During examination in February 2016, [Plaintiff]'s gait was normal. She exhibited bilateral paravertebral spasms of the lumbosacral spine with radiculopathy. Her muscle strength, sensation, and reflexes were all normal (Exhibit 9F, page 17). In March 2016, she was evaluated by a physical therapist, who noted she used no ambulatory aid. [Plaintiff] had decreased lumbar range of motion and weakness in core and bilateral lower extremities (Exhibit 11F). In April 2016, imaging of the right hip showed mild degenerative joint disease, but a pelvis x-ray showed no evidence of acute fracture or dislocation (20F, page 151). Records indicate her condition was stable (Exhibit 20F).

MRI of the lumbar spine from December 2016 revealed an L5 right pedicle fracture which appeared acute with edema, but [Plaintiff] had no lumbar vertebral body malalignment. Additionally, it showed only mild unchanged multilevel lumbar spondylosis with no spinal canal stenosis or significant neural foraminal narrowing.

3

A December 2016 progress note showed that [Plaintiff] reported falling October 31, 2016 from slipping in the bathtub, but she did not appear to be a fall risk and did not use an ambulatory aid. She reported her low back pain as only a 2/10 (Exhibit 20F). She underwent injections and reported relief (Exhibit 36F). Progress notes indicated myofascial pain with tenderness and limited range of motion. However, [Plaintiff]'s straight leg raise testing was negative. [Plaintiff]'s sensation was intact. [Plaintiff] received additional injections in which she reported 50 to 95 percent relief (Exhibit 24F). Imaging of the lumbar spine from July 2019 showed no significant loss of disc height (Exhibit 27F, page 55). [Plaintiff] continued to report spasms but only exhibited some tenderness and decreased range of motion on examination. Her straight leg raise testing was negative. [Plaintiff]'s gait was normal (Exhibits 34F, 36F, and 41F). In August 2019, her range of motion of the lumbar spine was normal (Exhibit 38F).

[Plaintiff] testified to cardiac and breathing problems, and in May 2015, she was diagnosed with angina Prinzmetal, history of family ischemic heart disease, tobacco use disorder, airway obstruction, and obesity (Exhibit 4F). A February 2016 review of systems was negative with no chest pain and no shortness of breath (Exhibit 15F). An October 2015 progress note showed that she reported no flare-up of her angina (Exhibit 9F).

\*\*\*

Pulmonary function testing from June 2016 showed mild to moderate airway obstruction, air trapping consistent with emphysema, and mild reduction in diffusion capacity consistent with impairment in gas exchange (Exhibit 17F). [Plaintiff] reported in December 2016 that she had a heart monitor and history of COPD, but that her hypertension was controlled with medication. [Plaintiff] noted that she had lost 76 pounds since March 2016. On December 22, 2016, she reported several episodes of angina and had taken nitroglycerin, and she was currently wearing her heart monitor (Exhibit 20F).

[Plaintiff] continued with inhalers. She exhibited mild decreased airflow breath sounds, diminished decreased airflow and wheezing on forced expiration with no crackles, rhonchi, or wheezing over the lungs bilaterally. [Plaintiff] continued to smoke. Chest x-rays showed findings consistent with chronic obstructive pulmonary disease. However, progress notes show her COPD is fairly well controlled with inhalers. She reported feeling rested and energetic and denied daytime sleepiness. [Plaintiff] continued to exercise three days per week in the phase three pulmonary rehab program. She noted weight loss and was happy with her progress. [Plaintiff] reported her shortness of breath had "significantly improved," and that she could walk on the treadmill 10-15 minutes or longer at a

12 percent incline without stopping (Exhibit 17F). In September 2017, [Plaintiff] was hospitalized with spasms but also continued to smoke; she was under tremendous amount of emotional distress. It was noted that smoking made it very hard to control spasms. [Plaintiff]'s cardiac workup was negative and she was discharged (Exhibit 22F). During follow up in January 2018, [Plaintiff] reported doing well. In October 2018, her condition remained stable (Exhibit 25F). The records also indicated her hypertension was well controlled (Exhibits 28F, 34F, and 41F).

Follow up pulmonary function testing from October 2017 continued to show mild to moderate airway obstruction, air trapping and lung overinflation consistent with emphysema, and mild reduction in diffusion capacity (Exhibit 23F). According to a progress note from December 2017, [Plaintiff] complained of increased shortness of breath with exercise but she also continued to smoke. Other than mildly decreased airflow, her examination was normal. [Plaintiff] was advised to continue with medication, and counseled on the benefits of weight loss, and cessation of smoking (Exhibit 23F).

During a consultative examination on October 21, 2019, Mark Weaver, M.D., noted [Plaintiff] became slightly short of breath without chest pain after walking 40 feet up and down the hallway. Her lungs revealed diffuse decreased breath sounds in all lung field bilaterally without wheezes, rales, or rhonchi. She reported smoking two packs of cigarettes per day. Her heart rate was normal. Her range of motion of testing was normal other than that of the lumbar spine. Her strength testing was normal. [Plaintiff] exhibited no neurological deficits. Dr. Weaver indicated [Plaintiff] should probably be limited in the performance of physical activities involving sustained sitting, standing, walking, climbing, lifting, carrying, operating at heights or around hazardous machinery, travel, and operating in environments containing excessive heat, humidity, or chemical aerosols. She would probably be able to perform physical activities involving handling objects, speaking, hearing, and following directions. He completed a physical assessment form and found [Plaintiff] could perform sedentary exertion except sit one hour at one time for a total of three hours, stand one hour at one time for a total of three hours, and walk 30 minutes at one time for a total of two hours in an eight-hour workday. [Plaintiff] could occasionally reach with the bilateral upper extremities and push/pull with the left upper extremity. She could never climb ladders or scaffolds and occasionally perform all other postural activities. [Plaintiff] should avoid all exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heat and occasional exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, and vibrations (Exhibit 30F). The undersigned gives the opinion of Dr. Weaver only minimal weight as it was speculative and his findings are not consistent with the objective evidence during the physical

5

examination. The record does support [Plaintiff] is limited to sedentary exertion but there is no evidence to support such limitations in sitting, standing, and walking. In fact, progress notes indicate [Plaintiff]'s conditions are stable (Exhibits 38F, 41F, and 42F). In June 2020, [Plaintiff] reported doing well. She noted only intermittent back pain with activity but that it responded well to medication. Her other conditions remained stable (Exhibit 42F).

(R. 1053-1056.)

## IV. ADMINISTRATIVE DECISION

On November 3, 2020, the ALJ issued her decision. (R. at 1042-1071.) The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. (R. at 1050.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff has not engaged in substantially gainful activity since March 26, 2015, the alleged onset date. (*Id.*) The ALJ found that Plaintiff had the severe impairments of degenerative disc disease with myofascial pain syndrome and history of pedicle fracture, chronic obstructive pulmonary disease with emphysema, Prinzmetal's angina with coronary artery disease, hypertension, obesity, and an

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

adjustment disorder with depression and anxiety. (*Id.*) The ALJ further found that Plaintiff did

not have an impairment or combination of impairments that met or medically equaled one of the

listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

Before proceeding to Step Four, The ALJ set forth Plaintiff's residual functional capacity

("RFC") as follows:

> After careful consideration of the entire record, [The ALJ] finds that since March 26,
> 2015, [Plaintiff] has the residual functional capacity to perform sedentary work as
> defined in 20 CFR 404.1567(a) and 416.967(a) except she can sit six hours, stand two
> to three hours, and walk one to two hours each in an eight-hour workday. [Plaintiff]
> can reach and finger frequently. She can push and pull occasionally with the upper
> and lower extremities. [Plaintiff] can never climb ladders, ropes, or scaffolds, squat,
> kneel, or crawl. She can occasionally climb ramps and stairs, balance, stoop, and
> crouch. She must avoid unprotected heights and moving mechanical parts. [Plaintiff]
> must avoid concentrated exposure to pulmonary irritants. She must avoid extremes
> of temperature and excessive vibration. [Plaintiff] is limited to simple work decisions
> and low stress work, which is work without strict production quotas or fast pace. She
> requires a job without customer service, but can be around members of the public.
> [Plaintiff] can tolerate occasional contact with supervisors and coworkers.

(R. at 1052-53.)

At step four of the sequential process, the ALJ determined that Plaintiff is unable to

perform her past relevant work as a bartender, waitress or cashier, all light exertion, unskilled jobs.

(R. at 1059.) Relying on the VE's testimony, at Step 5, the ALJ found that, prior to August 27,

2020, transferability of job skills is not material to the determination of disability because using the

Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled"

whether or not Plaintiff has transferable job skills. Beginning on August 27, 2020, transferability is

a material issue, but Plaintiff is not able to transfer job skills to other suitable occupations. (R. at

1060.) Prior to August 27, 2020, the date Plaintiff's age category changed, considering her age,

education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could have performed such as a document preparer, product inspector or assembler.  (*Id.*)  Beginning on August 27, 2020, the date Plaintiff's age category changed, considering Plaintiff's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that Plaintiff could perform.  (R. at 1061.)  Plaintiff was not disabled prior to August 27, 2020, but became disabled on that date.  (*Id.*)  She concluded that Plaintiff was not under a disability within the meaning of the Social Security Act at any time through December 31, 2017, her date last insured.  (*Id.*)

## V.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the

8

Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.   ANALYSIS

Plaintiff raises two issues in his statement of errors. First, Plaintiff asserts that the ALJ failed to provide good reasons supported by substantial evidence explaining why Dr. Naum's treating source opinions were being accorded less than controlling weight. (ECF No. 18 at 8-12.) Further, Plaintiff contends that, under *Seila Law LLC v. CFPB*, 591 U.S. --, 140 S.Ct. 2183 (June 20, 2020), the Social Security Administration's structure is unconstitutional as it violates the separation of powers doctrine. (*Id.* at 12-17.) The Undersigned will consider Plaintiff's alleged errors in reverse order and, as explained below, concludes that Plaintiff's arguments are not well taken.

### A.  Separation of Powers

Plaintiff asserts that remand is required because a statute that provided tenure protection to the former Commissioner of Social Security Andrew Saul violated the separation of

powers doctrine.  He contends, therefore, that the decision to deny him benefits was made by individuals who lacked a proper delegation of power to make a benefits determination. The Undersigned finds no merit to this Constitutional claim.

As a preliminary matter, Plaintiff's claim, in the manner he has raised it here, is procedurally improper. *Butcher v. Comm'r of Soc. Sec.*, No. 2:20-cv-6081, 2021 WL 6033683, at *6 (S.D. Ohio Dec. 21, 2021); *Crawford v. Comm'r of Soc. Sec.*, No. 2:21-CV-726, 2021 WL 5917130, at *7 (S.D. Ohio Dec. 14, 2021).  This is so because Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although a complaint need not provide "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell v. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  At a minimum, a complaint must "give the defendant fair notice of what the. . . claim is and the grounds upon which it rests." *Id*.  Here, the United States Supreme Court case upon which Plaintiff bases his Constitutional claim was decided on June 20, 2020. Plaintiff, however, gave no notice, let alone fair notice, of this claim in his complaint filed on March 1, 2021. (ECF No. 1.)  *Butcher,* 2021 WL 6033683, at *6 (citing *John R. v Comm'r of Soc. Sec*., Case No. C20-6176-MLP, 2021 WL 5356719, *7 (W.D. Wash. Nov. 16, 2021) (finding that a plaintiff failed to comply with Rule 8 by failing to plead a separation of powers claim in complaint seeking judicial review of Commissioner's decision to deny benefits); *Shannon R. v. Comm'r of Soc. Sec.*, Case No. C21-5173, 2021 WL 5371394, at * 6–7 (Nov. 18, 2021) (same)).  For this reason, Plaintiff failed to comply with Rule 8.

Beyond this procedural deficiency, Plaintiff's Constitutional claim fails on a substantive basis as well. Plaintiff, relying on *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020), contends that former-Commissioner Andrew Saul's appointment violated the principle of separation of powers because 42 U.S.C. § 902(a)(3) provides for a six-year term and makes the Commissioner removable only upon a finding of neglect of duty or malfeasance in office. (ECF No. 18 at 12-13.)  Accordingly, Plaintiff argues that the Commissioner had no authority to carry out any functions of his office and, by extension, the ALJ had no authority to adjudicate Plaintiff's applications, necessitating a remand.  In response, the Commissioner concedes that § 902(a)(3) violates the principle of separation of powers. (ECF No. 23 3 "The parties agree that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause.") The parties' agreement on this issue, however, is not dispositive.

Plaintiff asserts that because the removal provision is unconstitutional, any delegations of power by former Commissioner Saul, including delegations of authority to ALJs or the Appeals Council who determined his benefits claims, were invalid.  The Commissioner counters, however, that the ALJ who determined Plaintiff's claim on November 3, 2020, held office on that date because of a ratification of delegated authority in July 2018, by former Acting Commissioner Nancy Berryhill, not because of a delegation of authority from former Commissioner Saul. (ECF No. 23 at 5 n.2.)  As the Commissioner correctly notes, an Acting Commissioner is not subject to § 902(a)(3)'s removal provision thereby making that provision's constitutionality, or lack thereof, irrelevant.  *Butcher*, 2021 WL 6033683, at *6 (citing *Collins v.*

*Yellin*, 141 S.Ct. 141 S. Ct. 1761, 1781 (2021) (because the FHFA removal restrictions only applied to the Director, "any constitutional defect in the provisions restricting the removal of a confirmed Director would not have harmed [the plaintiffs], and they would not be entitled to any relief" from actions of the Acting Director who enjoyed no such removal protections); *Thomas E. v. Comm'r of Soc. Sec.*, C21-5107-BAT, 2021 WL 5415241, *5 (W.D. Wash. Nov. 19, 2021) (finding no constitutional injury where ALJ's appointment was ratified by Acting Director Berryhill who, as Acting Director, was not subject to the removal provision in § 902(a)(3)); *Alice T. v. Comm'r of Soc. Sec.*, 8:21CV14, 2021 WL 5302141, *18 (D. Neb. Nov. 15, 2021) (same); *Boger v. Kijakazi*, No. 1:20-cv-00331-KDB, 2021 WL 5023141, * 3 n.4 (W.D.N.C Oct. 28, 2021) ("Plaintiff's constitutional 'removal restriction' argument is likely not even applicable to this case because [the ALJ] was appointed by an Acting Commissioner of Social Security who could be removed from the office at the President's discretion.")).

First, even accepting, as the Commissioner agrees, that the removal provision in § 902(a)(3) is unconstitutional, it would not have deprived former Commissioner Saul of the ability to delegate power to others to decide Plaintiff's benefit claim because of the doctrine of severability. *Butcher,* 2021 WL 6033683, at *7.  As the Supreme Court noted in *Seila Law*, "'one section of a statute may be repugnant to the Constitution without rendering the whole act void.'" 140 S.Ct. 2208 (quoting *Loeb v. Columbia Township Trustees*, 179 U.S. 472, 490 (1900)).  Indeed, even in the absence of a severability clause, when "'confronting a constitutional flaw in a statute, [the Supreme Court tries] to limit the solution to the problem, severing any problematic portions while leaving the remainder intact.'" *Id*. (quoting *Free Enterprise Fund v.*

*Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 508 (2010)).  For that reason, in *Seila Law*, the Supreme Court found that the unconstitutional removal provision was severable from the remainder of the CFPB's governing statutes because the CFPB was capable of functioning independently even if the unconstitutional removal provision was stricken. 140 S.Ct. at 2209–10, 2245.  The same is true here.  If the removal provision in § 902(a)(3) is stricken, the Social Security Administration would remain fully functional. *Butcher,* 2021 WL 6033683, at *7 (citing *Alice A. v. Comm'r of Soc. Sec.*, Case No. C20-5756, 2021 WL 5514434, *6 (W.D. Wash. Nov. 24, 2021) (finding that plaintiff's separation of powers claim failed, in part, because even if § 902(a)(3) was unconstitutional it was severable from the remainder of the statutes governing the Social Security Administration); *Shaun A. v. Comm'r of Soc. Sec.*, Case No. C21-5003-SKV, 2021 WL 5446878, *4 (W.D. Wash. Nov. 22, 2021) (same); *John R. v Comm'r of Soc. Sec.*, 2021 WL 5356719, *8 (same)).

Additionally, even assuming the unconstitutionality of the removal provision in § 902(a)(3), that would not have automatically rendered former Commissioner Saul's appointment invalid.  For this reason, it would not have automatically invalidated his actions, including delegating authority to make benefits determinations or ratifying such delegations. *Butcher*, 2021 WL 6033683, at *7.  In *Collins v. Yellin*, 141 S.Ct. 141 S. Ct. 1761 (2021), decided after *Seila Law*, the Supreme Court considered a statute similar to § 902(a)(3) governing removal of Directors of the Federal Housing Finance Agency ("FHFA").  The *Collins* majority held that "[a]lthough the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office.  As

13

a result, there is no reason to regard any of the actions taken by the FHFA [ ] as void." *Id.* at 1787 (emphasis in original); *see also id.* at 1788, n.23 ("Settled precedent also confirms that the unlawfulness of [a] removal provision does not strip the Director of the power to undertake the other responsibilities of his office[.]" (citing *Seila Law*, 140 S.Ct. at 2207–2211)).  Instead, to obtain reversal of an agency decision, a plaintiff must demonstrate "compensable harm" flowing from the unconstitutional removal clause. *Collins, 141* S.Ct.. at 1788–89 (remanding for further proceedings to determine whether compensable harm to Plaintiff occurred due to the President's inability to remove a Director of the Federal Housing Finance Agency except for cause).

Here, as the Commissioner contends, Plaintiff has made no showing of compensable harm. In fact, as courts considering this precise argument have begun to conclude, it is unlikely that he could.  *See Butcher,* 2021 WL 6033683, at *8; *Crawford,* 2021 WL 5917130, at *8 (reaching identical conclusion on similar facts).  As recognized by Justice Kagan in *Collins*, the President's choice of SSA Commissioner has very little impact on the result of any particular ALJ or Appeals Council decision. *Collins,* 141 S.Ct. at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone . . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference.").  Nor is the Court persuaded by Plaintiff's argument that harm should be presumed under the circumstances here. Again, neither appointments nor actions taken by a properly appointed official are nullified by an unconstitutional removal provision. *Butcher,* 2021 WL 6033683, at *8.

14

For all these reasons, the Undersigned finds that Plaintiff's separation of powers claim lacks merit.[2]  Accordingly, the Undersigned does not reach the Commissioner's alternative arguments including harmless error, *de facto* officer, the rule of necessity, and other prudential considerations.

### B.  Treating Physician Rule/ Dr. Naum's Opinion

Plaintiff further asserts that the ALJ erred in weighing the opinion of G. Phillip Naum, M.D., her treating primary care provider. (ECF No. 18 at 8-12).

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 404.1527(c). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal

---

[2] Significantly, district courts in this Circuit, including, as noted, this one, have rejected the Constitutional claim raised by Plaintiff and consistently have concluded that the allegedly unconstitutional nature of § 902(a)(3) does not require remand. *See, e.g., Walker v. Comm'r of Soc. Sec.,* No. 4:20-CV-02506-CEH, 2022 WL 1266135, at *8 (N.D. Ohio Apr. 28, 2022); *Butcher,* 2021 WL 6033683;*Crawford,* 2021 WL 5917363*; Miley v. Comm'r of Soc. Sec.,* No. 1:20-CV-2550, 2021 WL 6064754 (N.D. Ohio Dec. 22, 2021); *Wybo v. Kijakazi.*, No. 20-518-HRW, 2021 WL 6052423 (E.D. Ky. Dec. 21, 2021). Courts from other Circuits have held similarly. *See, e.g.*, *Lisa Y. v. Comm'r of Soc. Sec.*, ___ F. Supp. 3d ___, No. C21-5207-BAT, 2021 WL 5177363, at *5 (W.D. Wash. Nov. 8, 2021); *Robinson v. Kijakazi*, No. 1:20-CV-00358-KDB, 2021 WL 4998397, at *3 (W.D.N.C. Oct. 27, 2021); *Alice T. v. Comm'r Soc. Sec.*, No. 8:21CV14, 2021 WL 5302141, at *18 (D. Neb. Nov. 15, 2021); *Standifird v. Comm'r of Soc. Sec.*, No. 20CV1630-GPC(BLM), 2021 WL 5634177, at *3 (S.D. Cal. Dec. 1, 2021). The Undersigned agrees with the reasoning set forth in these other cases and reaches the same result.

picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical

evidence that cannot be obtained from the objective medical filings alone . . ." 20 C.F.R. §

404.1527(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581

F.3d at 408.[3]  If the treating physician's opinion is "well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. §

404.1527(c)(2).

   If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ

must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544

(6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling

weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment
> relationship and the frequency of examination, the nature and extent of the
> treatment relationship, supportability of the opinion, consistency of the opinion
> with the record as a whole, and the specialization of the treating source—in
> determining what weight to give the opinion.

*Id.* Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination

or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. §

404.1527(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to

any subsequent reviewers the weight the adjudicator gave to the treating source's medical

---

[3] "Revisions to regulations regarding the evaluation of medical evidence went into effect
on March 27, 2017, and purport to apply to the evaluation of opinion evidence for claims filed
before March 27, 2017." *Smith v. Comm'r of Soc. Sec*., No. 3:18CV622, 2019 WL 764792, at *5
n.2. (N.D. Ohio Feb. 21, 2019) (citing 82 Fed. Reg. 5844-5884 (Jan. 18, 2017)). Plaintiff's claim
was filed prior to March 27, 2017, before the new regulations took effect.

opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550

(6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth

Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand
> the disposition of their cases," particularly in situations where a claimant knows
> that his physician has deemed him disabled and therefore "might be especially
> bewildered when told by an administrative bureaucracy that she is not, unless
> some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d
> 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the
> treating physician rule and permits meaningful review of the ALJ's application
> of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly

important when the treating physician has diagnosed the claimant as disabled." *Germany-

Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d

at 242).

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson*

factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222

(6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to

explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical

opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a

claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will

consider opinions of treating physicians "on the nature and severity of your impairment(s),"

opinions on issues reserved to the Commissioner are generally not entitled to special significance.

20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

When discussing Dr. Naum's opinion, the ALJ found as follows:

On April 25, 2016, G. Phillip Naum, M.D., completed a form and found [Plaintiff] could work none to one hour per day. She could stand and walk none to 15 minutes at one time. [Plaintiff] could stand and walk none to 60 minutes in workday. She could sit none to 15 minutes at one time and none to 60 minutes in workday. [Plaintiff] could never bend, stoop, balance, or work around dangerous equipment. She could occasionally tolerate heat but never tolerate cold or dust, smoke, or fumes. [Plaintiff] would need to elevate legs most of the time during an 8-hour workday. Dr. Naum indicated it was his opinion that [Plaintiff] would suffer from severe pain. Her pain symptoms required her to take unscheduled breaks, taking her off task for at least 10 percent of the workday (Exhibit 12F). The undersigned gives no weight to the opinion of Dr. Naum, as a person so limited would need 24-hour care. Furthermore, the opinion is vague. [Plaintiff] could stand and walk a total of not at all to only 1 hour in a workday, which indicates [Plaintiff] might not walk at all. Likewise, sitting rated as none to 60 minutes. [Plaintiff] testified she sits a lot during the day and that she even took up knitting because she sits so much. He provided no opinion on her ability to lift. Exhibit 15F is the statement of a neurosurgeon to whom Dr. Naum apparently referred [Plaintiff]. He recommended physical therapy and no surgery. Furthermore, in February 2017, [Plaintiff] reported walking on the treadmill 10 to 15 minutes or longer at a 12 percent incline (Exhibit 17F).

(R. at 1059.)

As this excerpt demonstrates, Plaintiff 's claimed errors here are wholly meritless. First, Plaintiff contends that the ALJ does not seem to understand that Dr. Naum's opinion was provided in the context of a normal workday or week. The plain language of the ALJ's analysis demonstrates exactly the opposite. Plaintiff further maintains that the ALJ's reference to the need for 24-hour care represents the ALJ's attempt to play doctor. Not so. This comment, not specific to Plaintiff in any way, merely indicates that the ALJ found the opined limitations extreme. This is entirely consistent with her decision to afford Dr. Naum's opinion no weight. Plaintiff also takes issue with the ALJ's use of the term "vague" to describe Dr. Naum's opinion. Again, this argument is merely straw-grasping. Undoubtedly, there is a distinction between the ability to walk for an hour and

18

an inability to walk at all.  Dr. Naum's opinion, set forth in a one-page checklist form without additional commentary, offers no meaningful explanation acknowledging this distinction.  (R. at 809.)  Additionally, Plaintiff argues the ALJ addressed only a portion of Dr. Naum's opinion.  Again, simply not so.  Rather, the ALJ noted Dr. Naum's opined restrictions but then highlighted particular limitations to support her conclusion that the opinions were entitled to no weight.  Finally, Plaintiff asserts that the ALJ did not find that Dr. Naum's opinions were inconsistent with or not supported by the record.  This, however, is precisely what the ALJ found.

Contrary to Plaintiff's characterizations, the ALJ pointed to specific record evidence in support of her decision to reject Dr. Naum's opinion.  In so doing, she satisfied the "good reason" requirement of the treating physician rule. *See Friend*, 2010 WL 1725006, at *7 (holding that the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight"); *see also Tilley*, 394 F. App'x at 222 (indicating that, under the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).  For example, the ALJ specifically cited Plaintiff's self-reports of her sitting and walking abilities.  (R. at 1059 citing R. at 827; hearing testimony.)  Plaintiff does not challenge the ALJ's characterization of those self-reports.  The ALJ also noted the neurosurgeon's recommendation of only conservative treatment in the form of physical therapy but not surgery.  (*Id.* citing R. at 824 "[m]y recommendation is outpatient physical therapy and if this does not help to consider doing epidural steroids.")  Plaintiff likewise does not challenge this characterization.  Moreover, Plaintiff does not otherwise

demonstrate how the ALJ failed to satisfy her obligation to provide good reasons for failing to

assign any weight to Dr. Naum's opinions.

Beyond this, as set forth above, elsewhere in her decision the ALJ discussed at length

objective medical evidence that she found did not support disabling limitations.  (R. at 1053-1056.)

"Where the opinion of a treating physician is not supported by objective evidence of is inconsistent

with the other medical evidence of record, this Court generally will uphold an ALJ's decision to

discount that opinion."  *Price v. Comm'r Soc. Sec. Admin.,* 342 F. App'x 172, 176 (6th Cir. 2009).

That is the situation here.  For example, the ALJ noted that imaging of Plaintiff's lumbar spine

from July 2019 showed no significant loss of disc height, only some tenderness and decreased

range of motion, negative straight leg raising and normal gait. (R. at 1054.)  Further, in August

2019, Plaintiff's range of motion was normal.  (*Id.*)  With respect to Plaintiff's cardiac and

breathing impairments the ALJ cited Plaintiff's negative cardio workup in September 2017 and a

normal pulmonary function examination with only mildly decreased airflow in December 2017.

(R. at 1055.)  The ALJ also reasonably considered Plaintiff's range of daily activities including

shopping, driving and cooking.  (R. at 1056.)  Finally, the ALJ reasonably relied on the testimony

of David Owens, M.D., the testifying medical expert.  Dr. Owens opined the claimant is limited to

sedentary exertion with sitting six hours. She could stand two to three hours and walk one to two

hours but not continuously.  (R. at 1057; 1106.)  The ALJ was not required to repeat this analysis

in her evaluation of Dr. Naum's opinion. *Carlene C. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-

245, 2022 WL 278168, at *5 (S.D. Ohio Jan. 31, 2022) (citing *Sprague v. Colvin*, 2015 WL

2066227, at *3 (S.D. Ohio May 4, 2015)).

Taking all of the above into account, the Undersigned finds that substantial evidence supports the ALJ's decision to assign no weight to Dr. Naum's opinion. The Court of Appeals for the Sixth Circuit has repeatedly held that "[i]f substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotations omitted). The ALJ followed the proper analysis and adhered to the treating physician rule, providing "good reasons" for assigning less than controlling weight to Dr. Naum's opinion. For this reason, the Undersigned concludes that there is no merit to Plaintiff's remaining contention of error**.**

## VII.    CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore, **RECOMMENDED** that Plaintiff's Statement of Errors (ECF No. 18) be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

## VIII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge and forfeiture of the right to appeal the judgment of the District Court.  Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date:    May 17, 2022                                /s/ *Elizabeth A. Preston Deavers*
                                                 Elizabeth A. Preston Deavers
                                                 United States Magistrate Judge

22